IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN ROY JORDAN,<br><br>          Plaintiff<br><br>   v.<br><br>ALEX FAGAN, JR., et al.,<br><br>          Defendants. | No. C 03-1194 MJJ<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |

### INTRODUCTION

Before the Court is San Francisco police officers Alex Fagan Jr. and Jason Kristal's (collectively "Defendants") motion for partial summary judgment ("Motion") based on qualified immunity in this § 1983 lawsuit arising from Plaintiff Kevin Jordan's arrest. For the following reasons, the Court **GRANTS** Defendants' Motion.

### FACTUAL BACKGROUND

On the afternoon of July 23, 2002, Plaintiff parked his car in a Toys-R-Us store parking lot located in a shopping complex at Geary Street and Masonic Avenue in San Francisco. Plaintiff testified that he had gone shopping for walkie talkies at the Toys-R-Us, but had to leave the store because he was having a "panic attack." (Deposition of Kevin Jordan ("Jordan Depo.") at 129:14-130:3.) Plaintiff testified that he remained in the Toys-R-Us parking lot for three hours, during which time his panic attack continued. According to the security guards at the complex, Plaintiff

1  was behaving in a strange and paranoid manner.[1]  The security guards called the police and asked
2  them to investigate.
3        At approximately 7 p.m., Defendants responded to the scene.  According to Defendant
4  Kristal, the dispatcher had informed Defendants as follows: "The past four hours this man had been
5  loitering in the courtyard.  The person stated he was surveillance for Toys R Us.  He was asking odd
6  questions, very paranoid."  (Deposition of Officer Jason Kristal at 107:2-5.)  Upon arrival,
7  Defendants approached Plaintiff and inquired into his strange behavior.  Plaintiff responded that he
8  was looking for his car keys.  Defendant Kristal testified that he asked Plaintiff to step away from
9  the trunk of his car and Plaintiff refused.  Defendant Kristal also testified that he asked Plaintiff to
10 put down a bag he was holding and Plaintiff refused.  Defendant Kristal also testified that Plaintiff
11 made threatening gestures towards Defendants.  According to Plaintiff, Defendant Fagan stated that
12 "[f]or the safety of myself and my fellow officer, I need to put handcuffs on you."  (Jordan Depo at
13 161:10-11.)  Plaintiff admitted, both at oral argument and in his opposition brief, that he "pulled
14 away" as Defendant Kristal attempted to handcuff him.  According to Plaintiff, Defendants
15 handcuffed him and pushed him face first to the ground.  Plaintiff alleges that Defendants pulled him
16 upright, pushed him down again, and repeated this action between three and twenty times.  Plaintiff
17 also alleges that Defendants kicked him in the ribs.  Plaintiff was eventually charged with a felony
18 attempt to take a firearm from a police officer, assault on a police officer, and resisting arrest.

### LEGAL STANDARD

20       The summary judgment procedure is a method for promptly disposing of actions.  *See* FED.
21 R. CIV. PROC. 56.  The judgment sought will be granted if "there is no genuine issue as to any
22 material fact and [] the moving party is entitled to judgment as a matter of law."  FED. R. CIV. PROC.
23 56(c).  "[A] moving party without the ultimate burden of persuasion at trial [] may carry its initial
24 burden of production by either of two methods.  The moving party may produce evidence negating
25 an essential element of the nonmoving party's case, or, after suitable discovery, the moving party
26 may show that the nonmoving party does not have enough evidence of an essential element of its
27 claim or defense to carry its ultimate burden of persuasion at trial."  *Nissan Fire & Marine Ins. Co.,*

---

[1] Plaintiff denied being under the influence of drugs during the incident.

*Ltd., v. Fritz Companies*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the movant meets its burden, the nonmoving party must come forward with specific facts demonstrating a genuine factual issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, "the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In opposing summary judgment, the nonmoving party may not rest on his pleadings. He "must produce at least some 'significant probative evidence tending to support the complaint.'" *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

The Court does not make credibility determinations with respect to evidence offered, and is required to draw all inferences in the light most favorable to the non-moving party. *See T.W. Elec.*, 809 F.2d at 630-31 (citing *Matsushita*, 475 U.S. at 587 ). Summary judgment is therefore not appropriate "where contradictory inferences may reasonably be drawn from undisputed evidentiary facts . . .." *Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d 1324, 1335 (9th Cir. 1980).

**ANALYSIS**

The Fourth Amendment proscribes "unreasonable searches and seizures." Here, Plaintiff contends that his Fourth Amendment rights were violated when he was arrested. Defendants argue that Plaintiff's initial detention did not constitute an arrest. Defendants also contend that they are entitled to qualified immunity for Plaintiff's actual arrest because they reasonably believed there was probable cause to arrest Plaintiff.

**A.     Initial Detention**

A suspect is arrested if a reasonable person in his position would conclude that he is not free to leave after brief questioning. *United States v. Del Vizo*, 918 F.2d 821, 824 (9th Cir. 1990). The difference between an arrest and a stop is one of degree and is dependent upon the "totality of the circumstances": specifically, the intrusiveness of the stop, how much the plaintiff's liberty was restricted, and the reasonableness of the methods used by the police officers under the circumstances. *Washington v. Lambert*, 98 F.3d 1181, 1185 (9th Cir. 1996). This is a balancing test

3

weighing the interests of individuals to be free from unreasonable searches and seizures against the legitimate public interest in protecting the safety of the police officers. *See id.* at 1186.

The Supreme Court and the Ninth Circuit have permitted limited intrusions on a suspect's liberty during a *Terry* stop to protect the officer's safety and have held that the use of force does not convert the stop into an arrest if it is justified by a concern for the officer's personal safety. *See United States v. Hensley*, 469 U.S. 221, 235-236 (1985); *Alexander v. County of Los Angeles*, 64 F.3d 1315, 1321 (9th Cir. 1995). The Ninth Circuit has held that "the use of handcuffs, if reasonably necessary, while substantially aggravating the intrusiveness of an investigatory stop, do[es] not necessarily convert a *Terry* stop into an arrest necessitating probable cause." *United States v. Taylor*, 716 F.2d 701, 709 (9th Cir. 1983); *see also United States v. Yang*, 286 F.3d 940, 950 (7th Cir. 2002) (finding that safety concerns made the brief use of handcuffs reasonable). Thus, when the police reasonably act because of legitimate safety concerns, handcuffing a suspect does not automatically turn a legal stop into an arrest.

In this case, the record indicates that Defendants responded to a dispatcher's report that a paranoid man had been in a Toys-R-Us parking lot for over three hours and had stated to store security guards that he was working as surveillance for the toy store. Defendant Kristal testified that upon arrival to the scene, he asked Plaintiff to step away from the trunk of his car. Plaintiff refused. Defendant Kristal also testified that he asked Plaintiff to put down a bag he was holding. Plaintiff refused. Defendant Kristal further testified he asked Plaintiff for his identification and Plaintiff failed to produce it.[2] Defendant Kristal also stated that Plaintiff made threatening gestures towards him. After this series of events, Plaintiff testified that Defendant Fagan informed him that he was going to be handcuffed to protect the officer's safety. *See United States v. Bravo*, 295 F.3d 1002, 1011 (9th Cir. 2002) (concluding that a police officer's statements that the handcuffs were only temporary is a proper factor to consider in a totality of the circumstances analysis).

Given the totality of the circumstances in this case, the Court concludes that Defendants acted reasonably in handcuffing Plaintiff to protect their safety. *See Taylor*, 716 F.2d at 709

---

[2] Defendant Kristal also stated that Plaintiff had multiple identifications with different pictures and names in his possession.

4

(holding that handcuffing was justified where suspect disobeyed order to raise hands and made furtive movements inside truck). The Court also concludes that Defendants' actions did not convert a *Terry* stop into an arrest necessitating probable cause.

### B.   Actual Arrest

Qualified immunity applies to claims of unconstitutional arrest if the arresting officers had *arguable* probable cause to arrest. *Anderson v. Creighton*, 483 U.S. 635 (1987). *Actual* probable cause is not necessary. *Id*. "Probable cause exists when, at the time of arrest, the agents know reasonably trustworthy information sufficient to warrant a prudent person in believing that the accused had committed or was committing an offense." *Allen v. City of Portland*, 73 F.3d 232, 237 (9th Cir. 1995) (citation omitted). An arresting police officer will only be denied qualified immunity where probable cause is so lacking as to render official belief in its existence unreasonable. *Malley v. Briggs*, 475 U.S. 335, 344-45 (1986).

Here, Plaintiff admitted, both at oral argument and in his opposition brief, that he "pulled away" as Defendant Kristal attempted to handcuff him. Thus, Defendants had probable cause to arrest Plaintiff under Cal. Penal Code § 148(a).[3] Accordingly, the Court **GRANTS** Defendants' motion for summary judgment.

### CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motion for partial summary judgment.

**IT IS SO ORDERED.**

Dated: May _27_, 2005

\_\_/s/_____
MARTIN J. JENKINS
UNITED STATES DISTRICT JUDGE

---

[3] Cal. Penal Code § 148(a) states that "[e]very person will willfully resists, delays, or obstructs any public officer, peace officer, or an emergency medial technician . . . in the discharge or attempt to discharge any duty of his or her office or employment, when no other punishment is prescribed, shall be punished by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in a county jail not to exceed one year, or by both that fine and imprisonment."