United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JAMES HENRY WASHBURN, et al.

Plaintiffs

v.

ALEX FAGAN, JR., et al.,

Defendants.
_______________________________________/

No. C 03-0869 MJJ
No. C 03-1194 MJJ

**ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

**INTRODUCTION**

Before the Court is San Francisco police officer Alex Fagan Jr., Officer Walter Contreras, and the City and County of San Francisco's ("the City") (collectively "Defendants") motion for summary judgment ("Motion") as to Plaintiffs Kevin Jordan and James Washburn's *Monell* claims. Plaintiffs have requested that the Court postpone ruling on the summary judgment motion and allow them to engage in further discovery pursuant to Federal Rule of Civil Procedure 56(f). This Order reflects the Court's careful consideration of the parties' briefs as well as the arguments proffered at the hearing. For the following reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment as to the *Monell* claims and **DENIES** Plaintiffs' Rule 56(f) request.

**FACTUAL BACKGROUND**

To the extent the Court recited the facts of both Washburn and Jordan's constitutional claims in its previous summary judgment order, the Court need not repeat them here. For purposes of the current motion, Plaintiffs contend that the City should be held liable for Fagan's

United States District Court
For the Northern District of California

use of excessive force against Plaintiffs.[1] In support of their claim, Plaintiffs assert that Fagan had a history of violent episodes and otherwise unsavory behavior during his brief stint as a San Francisco police officer. Plaintiffs contend that Fagan's unsuitability for employment as a police officer should have been readily apparent from his original employment application. Fagan's application for the San Francisco police department reflected that he had admitted drunk driving, had been charged with buying alcohol with falsified identification, smoked marijuana, received two speeding convictions within ninety days in 1999, and was involved in car accidents in 1996 and 1999. In addition, a psychological exam found him only "marginally suitable" for work as a police officer, and Fagan admitted to the physician examiner that he has "a fiery temper sometimes." (Declaration of Jai Goehl in Support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment (*Monell*) ("Goehl Decl.") at Ex. 4.)

Plaintiffs also contend that Fagan reportedly got into a fist fight with a fellow recruit at the police academy and was reported to have had a serious confrontation with his Field Training Officer. In addition, Plaintiffs assert that while in field training, Fagan apparently had three "reportable uses of force," thereby triggering the standard departmental counseling program. Fagan's immediate supervisor, Sergeant Stansberry, authored a memorandum on September 19, 2002, in which she concluded that Fagan "displayed a pattern with lack of anger management, not being respectful of supervisors, not following direct orders from supervisors, driving too fast and treating the public unprofessionally."[2] (Gohel Decl. at Ex. 1.) Stansberry recommended that Fagan be sent for retraining, including participation in "Anger Management" classes.

Despite all of these occurrences, Plaintiffs argue that the City failed to properly discipline Fagan or take any other remedial action. Plaintiffs contend that this resulted from the fact that Fagan's father ("Assistant Chief Fagan") was a high ranking member of the San Francisco Police Department during the time period at issue.

---

[1]The incident involving Washburn occurred on January 27, 2002. The incident involving Jordan occurred on July 23, 2003.

[2]Stansberry's memorandum was later leaked to the press. Plaintiffs assert that Stansberry suffered retaliation at the hand of police officials once the details of the memorandum became public.

United States District Court
For the Northern District of California

**LEGAL STANDARD**

The summary judgment procedure is a method for promptly disposing of actions. *See* FED. R. CIV. PROC. 56. The judgment sought will be granted if "there is no genuine issue as to any material fact and [] the moving party is entitled to judgment as a matter of law." FED. R. CIV. PROC. 56(c). "[A] moving party without the ultimate burden of persuasion at trial [] may carry its initial burden of production by either of two methods. The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Companies*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the movant meets its burden, the nonmoving party must come forward with specific facts demonstrating a genuine factual issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, "the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In opposing summary judgment, the nonmoving party may not rest on his pleadings. He "must produce at least some 'significant probative evidence tending to support the complaint.'" *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

The Court does not make credibility determinations with respect to evidence offered, and is required to draw all inferences in the light most favorable to the non-moving party. *See T.W. Elec.*, 809 F.2d at 630-31 (citing *Matsushita*, 475 U.S. at 587 ). Summary judgment is therefore not appropriate "where contradictory inferences may reasonably be drawn from undisputed evidentiary facts . . . ." *Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d 1324, 1335 (9th Cir. 1980).

**ANALYSIS**

Section 1983 "provides a cause of action for the 'deprivation of any rights, privileges, or

immunities secured by the Constitution and laws' of the United States." *Wilder v. Virg. Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law, statute, ordinance, regulation custom, or usage. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Ketchum v. Alameda County*, 811 F.2d 1243, 1245 (9th Cir. 1987).

A local government body, such as a municipality, cannot be held liable for the unconstitutional acts of its officers in a § 1983 action based solely on the doctrine of *respondeat superior*. *Monell v. Dep't of Social Servs. of the City of New York*, 436 U.S. 658, 690-91 (1978). Under *Monell*, a municipality is only subject to § 1983 liability for an employee's unconstitutional act where the execution of the municipality's policy or custom caused the constitutional injury. *Id*. at 694. A plaintiff may prove municipal liability by demonstrating: (1) a longstanding practice or custom that constitutes the standard operating procedure of the local entity; (2) that the individual who committed the tort was an official with "final policy-making authority" such that the challenged action itself constituted an act of official municipal policy; or (3) that an official with final policy-making authority ratified the unconstitutional decision of a subordinate. *Ulrich v. City & County of San Francisco*, 308 F.3d 968, 984-85 (9th Cir. 2002). "[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that a relevant practice is so widespread as to have the force of law." *Bd. of the County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404 (1997).

However, liability may not be imposed against a municipality for claimed violations of constitutional rights "unless *deliberate* action attributable to the municipality is itself the 'moving force' behind the plaintiff's deprivation of federal rights." *Bryan County*, 520 U.S. at 400. In order to show that "deliberate conduct" was the "moving force," a plaintiff must demonstrate "that the municipal action was taken with the requisite degree of culpability and must demonstrate a casual link between the municipal action and the deprivation of federal rights." *Id*. at 407. It is not enough to show that a plaintiff suffered a deprivation of rights at the hands of a municipal

United States District Court
For the Northern District of California

*employee*. *See id.* at 409. Rather, the plaintiff must further demonstrate that an act of the *municipality itself*, taken with "deliberate indifference as to its known or obvious consequences," led the employee to deprive the plaintiff of his federal rights. *Id.* The deliberate indifference standard is "a stringent standard of fault," *id.* at 412, requiring proof that the "plainly obvious consequence" of a decision by a municipal policy making official would be the particular injury suffered by the plaintiff. *Id.* at 413.

**I. Practice and Custom**

"Liability for improper custom may not be predicated on isolated or sporadic events; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). When one must resort to inference, conjecture and speculation to explain events, the challenged practice is not of sufficient duration, frequency and consistency to constitute an actionable policy or custom. *Id.* at 920.

**A. Failure to Discipline**

Plaintiffs contend that they have demonstrated that Defendants engaged in the practice and custom of tolerating Fagan's use of violence and excessive force throughout his sixteen months on the police force. In support, Plaintiffs note that Defendants were aware of the negative information contained in Fagan's employment application, Fagan's penchant for using force, and Fagan's poor job evaluations. Despite being aware of this information, Plaintiffs argue that Defendants' took no action to investigate or discipline Fagan.

Defendants respond that Plaintiffs' "custom" theory of liability can only succeed if Fagan's alleged misconduct is connected and related to Plaintiffs' excessive force claims. Defendants also argue that it is not enough for Plaintiffs to simply demonstrate that the City ignored Defendants' prior violations of office policy if that misconduct did not rise to the level of a constitutional violation.

As an initial matter, the Court notes that Plaintiffs must produce evidence that the City had prior notice that a constitutional violation was likely to occur, and acted with deliberate indifference to this risk. *See Los Angeles Police Protective League v. Gates*, 907 F.2d 879, 889

United States District Court

For the Northern District of California

(9th Cir. 1990) (stating that a plaintiff must demonstrate that his constitutional rights were violated *as a result* of an official city policy or custom) (citation omitted).   Thus, Plaintiffs must "establish a municipal custom coupled with causation - i.e., that policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations, and that this failure, at least in part, led to their injury."  *Bielevicz v. Dubinon*, 915 F.2d 845, 851 (3d Cir. 1990).  The Ninth Circuit has held that post-event evidence is admissible for proving the existence of a municipal defendant's policy or custom and "may be" highly probative of that inquiry.  *Henry v. County of Shasta*, 132 F.3d 512, 520 (9th Cir. 1997).

After considering the entirety of the evidence in the record, the Court finds that Plaintiffs have failed to produce evidence of any constitutional violations perpetuated by Fagan that resulted from an existing policy attributable to municipal policy decision makers.[3]  As an initial matter, Plaintiffs assert that Fagan had three "use of force" incidents during the first 90 days of his post-academy probationary period, which triggered a counseling session with Sergeant Lewis. Sergeant Stansberry testified that Sergeant Lewis authored a memorandum documenting these "use of force" incidents.  However, the only evidence in the record pertaining to the "use of force" incidents is the Stansberry's deposition testimony.  No documentary evidence of these incidents nor any report from Sergeant Lewis is in the record.  In fact, Stansberry admitted that she had never seen Sergeant Lewis's memorandum.  Her only knowledge of these incidents stemmed from a conversation she had with Sergeant Lewis.  (Deposition of Sergeant Stansberry at 343:13-344:6.) Without more, Plaintiffs' allegations regarding these "use of force" incidents are not sufficient to raise an issue of fact regarding whether the City was aware of Fagan's propensity to use excessive force.

Moreover, Stansberry's Performance Improvement Plan ("PIP") evaluations of Fagan do not address whether Fagan had a penchant for using excessive force.  Rather, the majority of these evaluations describe Fagan's interpersonal relationships with other officers, insubordination, and

---

[3]Despite Plaintiffs' assertion to the contrary, the Court finds that Fagan's background prior to his employment as a police officer, including his arrest for buying alcohol as a minor and his fights at the police academy, does not factor into whether the City had a policy or custom of failing to discipline Fagan.

lack of sensitivity in resolving conflicts. Moreover, while the September 2002 PIP evaluation alludes to Fagan's overuse of handcuffs and "his consistent ability to incite suspects into becoming resistors (i.e. poking his finger in their chest as he calls them names)," this evaluation occurred well after the Jordan and Washburn incidents, and thus does not factor into the Court's analysis. (Gohel Decl. at Ex. 16.)

Furthermore, Plaintiffs' reliance upon Stansberry's April 30, 2002 memorandum, in which she discusses three more "use of force incidents" involving Fagan, is unfounded.[4] An examination of that memorandum reveals that Stansberry "determined that there was not a negative pattern of conduct in these Use of Force Entries. It should be noted that two of these three incidents were illustrations of excellent felony arrests by Officer Fagan." (Reply Declaration (Original) of David Newdorf, Ex. B.) Stansberry's memorandum does not discuss any of the three incidents in detail, and certainly does not find that Fagan's use of force in any of the incidents was excessive.

The Court finds that the record does reflect that Fagan had a total of four citizen complaints filed against him at the Office of Citizen Complaints. (Declaration of Captain Denis O'Leary ("O'Leary Decl.") at ¶4.) The initial complaint against Fagan was received before the Washburn and Jordan incidents, but it did not involve the use of force. The next complaint received was Washburn's complaint, but it was not filed until *three days after* the Jordan incident. Thus, in the absence of any excessive force claims against Fagan prior to the Washburn or Jordan incidents, the City would have had no basis for disciplining Fagan prior to July 26, 2002.

However, Plaintiffs also rely on post-event evidence in an attempt to establish their *Monell* claims. This evidence consists of, in part, Stansberry's September 19, 2002 memo and the November 20, 2002 "Fajitagate" incident. Neither of the events lend support to Plaintiffs' failure to discipline theory. Stansberry's September 19, 2002 memo concluded that Fagan "displayed a pattern with lack of anger management, not being respectful of supervisors, not following direct orders from supervisors, driving too fast and treating the public unprofessionally." (Gohel Decl. at

---

[4]Plaintiffs also assert that Stansberry was retaliated against by members of the police department based on the unflattering statements she made about Fagan in a September 19, 2002 memorandum. The Court finds that these allegations are irrelevant because they do not tend to prove or disprove whether the City is liable for a widespread unconstitutional custom or practice.

Ex. 1.) The memo does not discuss Fagan's proclivity to use excessive force. Moreover, the "Fajitagate" incident involved Fagan's actions while off-duty, and hence this incident does not fall within the ambit of the city's province. Thus, neither of these incidents lend support to Plaintiffs' *Monell* claims.

Plaintiff's also rely upon other post-event incidents involving Fagan, including the September 18, 2002 arrest of James Smith and the alleged punching of a prisoner at Park Station. While Plaintiffs assert that this evidence should be considered highly probative of the City's policy of failing to discipline Fagan, the Court is unpersuaded. In *Henry*, the court found that the municipal defendant's failure to correct a "a blatantly unconstitutional course of treatment–stripping persons who have committed minor traffic infractions, throwing them naked into a 'rubber room' and holding them there for ten hours or more for failing to sign a traffic ticket or asserting their legal right to be brought before magistrate" – raised questions of fact whether the defendant had a policy which encouraged such misconduct. 132 F.3d at 520. The *Henry* court stated that "the evidence of the officials' conduct strongly suggests that Henry's treatment resulted from a widespread pattern of abuse by numerous individuals rather than a single instance of mistreatment by a solitary officer." *Id*. at 521.

The Court finds that *Henry* is clearly distinguishable from the present case. Here, Plaintiffs have not established that the City's policy of failing to discipline officers was "a widespread pattern of abuse by numerous individuals." Rather, Plaintiffs' evidence focuses on the City's failure to discipline a single officer - Officer Fagan.

Furthermore, the *Henry* court emphasized the "blatantly unconstitutional course of treatment" involved in that case. In contrast to the very clear instances of abuse and gross recklessness alleged in *Henry*, the allegations of excessive force against Fagan stemming from the September 18, 2002 arrest of James Smith and the punching of a prisoner at Park Station are, at best, unclear. While Stanberry's September 19, 2002 memo states that James Smith's alleged that Fagan "kicked [him] in the head," this allegation was directly contradicted by other officers at the scene. Furthermore, after Smith sued Fagan and the City for civil rights violations in San Francisco Superior Court, the jury rendered a special verdict that Fagan and his partner did not

United States District Court
For the Northern District of California

"intentionally touch Mr. Smith or cause Mr. Smith to be touched." Regarding the punching of a prisoner at Park Station, the only evidence in the record supporting this incident is Stansberry's deposition testimony. Stansberry made no mention of this incident in her September 19, 2002 memo and no citizen's compliant was ever filed in connection with the incident. In sum, these two alleged incidents stand in stark contrast to the "blatantly unconstitutional" acts found in *Henry*, and hence the Court finds them insufficient to support Plaintiffs' *Monell* claim.

For the foregoing reasons, the Court finds that Plaintiffs have failed to raise a genuine issue of material fact regarding whether the City had a policy or custom of permitting the use of excessive force and failing to punish officers for such conduct.[5]

**B. Failure to Train**

---

[5]Plaintiffs also assert that there is a broader practice and custom within the City to indulge, absent appropriate discipline, police misconduct, violence and excessive force. At the outset, the Court notes again that only deprivations occurring pursuant to municipal custom or policy lead to municipal liability. Thus, to avoid summary judgment, Plaintiffs must demonstrate the existence of an official policy and, as importantly, that this policy evidences a deliberate indifference to Plaintiffs' constitutional rights. *Oviatt v. Pearce,* 954 F.2d 1470, 1476-77 (9th Cir. 1992). The Court finds, for the reasons below, that Plaintiffs have failed to establish a genuine material issue of fact regarding the existence of a policy which reflects deliberate indifference on the part of an official policy-maker as to their failure to discipline claim. Initially, the Court notes that the specific incidents of force involving Defendant Fagan, relied upon by Plaintiffs, do not, without more, rise to a level of an official custom or practice. *Haugen v. Brosseau*, 351 F.3d 372, 393 (9th Cir. 2003); see also *Santiago v. Fenton*, 891 F.2d 373, 382 (1st Cir. 1997). The Court also finds that Plaintiffs' reliance upon the Civil Grand Jury Findings and the ACLU report to establish a broader custom and practice in support of Plaintiffs' failure to discipline claims, is insufficient. The Civil Grand Jury report focuses on the need to expedite citizen complaint investigations and thus does not establish the requisite notice or causation elements for *Monell* claims required under existing case law. *Oviatt*, 954 F.2d 1477-78. The Court also finds the declaration and report of ACLU policy analyst Mark Schlossberg insufficient for the purposes of this summary judgment motion. First, like the Grand Jury report, the ACLU report does not help to establish the elements of notice and causation. The focus of the ACLU report is the alleged inadequacy of police accountability mechanisms within the city of San Francisco. The report does not, however, address the issue pertinent to this motion - whether this allegedly inadequate system was the result of actions by city policy-makers arising from deliberate indifference to Plaintiffs' constitutional rights. For example, the report cites several "breakdowns" in city accountability systems, including the failure of managers within the police department to timely investigate citizen complaints and the failure to discipline officers who engaged in misconduct. While these conclusions may point to problems with city accountability mechanisms, they do not help establish that city policy makers were on notice of these problems or that these problems were caused by deliberate indifference on the part of city policy-makers. *Id.* Additionally, the Court finds that the ACLU report is not admissible under Fed. R. Civ. P. 37(c)(1). Rule 37(c)(1) states that "a party that...fails to disclose information...is not...permitted to use as evidence....on a motion any witness or information not so disclosed." Schlossberg is an expert under Fed. R. Evid. 702, and Plaintiffs did not timely disclose his identity pursuant to Fed. R.Civ. P. 26(a)(2). Per the Court's scheduling order, the deadline for disclosure of experts was March 1, 2005; Defendants would be prejudiced if the Court were to consider this evidence. (Doc. No. 64). Accordingly, Rule 37(c)(1) provides an additional basis for the Court not to consider the ACLU report in this motion.

While Plaintiffs have argued that Fagan's training was deficient, the evidence supporting their claim is woefully inadequate. Plaintiff have produced no evidence regarding the procedures and tactics employed by the City to train Fagan. Plaintiffs have also failed to offer any argument as to how the alleged use of excessive force against Plaintiffs was caused by a failure in training. Defendants have produced evidence that Fagan received the standard 960-hour Police Academy course before he became a police officer and completed an additional 60 hours of training while he was an officer. Accordingly, Plaintiffs have not established a genuine issue of material fact as to the question of whether Fagan received deficient police training.[6]

**II. Ratification**

In addition to their "custom and policy" theories, Plaintiffs assert that the City ratified "the misconduct, of its officers by failing to investigate, delay, or cover-up misdeeds." (Plaintiffs' Memorandum in Opposition to Summary Judgment ("Opp.") (*Monell*) at 37:2-3.) In *Christie v. Iopa*, the Ninth Circuit explained the ratification theory of municipal liability:

> To show ratification, a plaintiff must prove that the authorized policymakers approve a subordinate's decision and the basis for it . . . . Accordingly, ratification requires, among other things, knowledge of the alleged constitutional violation.

176 F.3d 1231, 1239 (9th Cir. 1999) (internal quotation marks and internal citations omitted). Ratification must be evidenced by a policymaker's "conscious, affirmative choice." *Gillette v. Delmore*, 979 F.2d 1342, 1347 (9th Cir. 1992). Lack of evidence that a final policymaker was aware of the incident is fatal to a plaintiff's claim that an authorized official ratified the specific conduct at issue. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (plurality) ("[O]nly those municipal officials who have 'final policymaking authority' may by their actions subject the

---

[6]Plaintiffs have also not raised a genuine issue of material fact as to the City's decision to hire Fagan as a police officer. Only where adequate scrutiny of the applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute "deliberate indifference." *Bryan County*, 520 at 411. "[Culpability] must depend on a finding that *this* officer was highly likely to inflict the *particular* injury suffered by the plaintiff." *Id*. at 412 (emphasis in the original). Plaintiffs' only evidence supporting improper hiring is that Fagan had a "fiery temper" and possible "anger management" issues. (Dr. Leinhart's Report, attached to Gohel Decl. at Ex. 8.) However, there is nothing in the record, prior to the date Fagan was hired by the City, to suggest that he would be likely to engage in physical fighting or use excessive force.

United States District Court
For the Northern District of California

government to § 1983 liability.").

The Court finds that Plaintiffs' ratification theory fails for the simple reason that Plaintiffs have produced no evidence demonstrating which municipal officers have final policymaking authority for the City. *See Christie*, 176 F.3d at 1239 ("However, as with any jury question, a plaintiff must establish that there is a genuine issue of material fact regarding whether a ratification occurred."). In Plaintiffs' opposition brief, they contend that Sergeant Stansberry, Officer Kristal, and Assistant Police Chief Alex Fagan Sr. were aware of Fagan's alleged misconduct. Plaintiffs also assert that "Fagan's conduct was widely known to other members of the SFPD." (Opp. at 37:9-10.) However, there is no evidence to support the conclusion that any of these individuals were authorized policymakers for the City. Accordingly, Plaintiffs have not established a genuine issue of material fact as to the question of whether City policymakers ratified Fagan's actions.[7]

**III. State Law Claims**

Defendants move for summary judgment as to the following state law claims: 1) defamation and invasion of privacy; 2) common law failure to intervene; 3) common law conspiracy and cover up; and 4) negligence. Defendants assert that California Government Code Section 821.6 provides absolute immunity from these claims. Section 821.6 states in its entirety:

> A public employee is not liable for an injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause.

This immunity applies whether the police allegedly "acted negligently, maliciously or with probable cause in carrying out their duties." *Baughman v. State of California*, 38 Cal. App. 4th 182, 192 (1995). This immunity applies at all stages of a judicial or administrative proceeding, starting with investigation and arrest or detention. *See Amylou R. v. County of Riverside*, 28 Cal. App. 4th 1205, 1212-13 ((1994).

Here, the Court finds that Section 821.6 immunity applies because each of the five state law claims are based on injuries Plaintiffs allegedly suffered from being detained and arrested in a

---

[7] Similarly, the Court finds that Plaintiffs have produced no evidence that the City has a custom, approved by final policy-makers, of deliberate indifference to the right of a member of the department to report a superior the misconduct of a fellow officer, i.e., the practice of the "code of silence."

United States District Court
For the Northern District of California

criminal investigation.[8] Accordingly, the Court **GRANTS** Defendants' motion for summary judgment as to these claims.[9]

**IV. Bifurcation and Consolidation**

Plaintiff Washburn has renewed his request to consolidate the trials of Washburn and Jordan pursuant to Fed. R. Civ. P 42(a).[10] Rule 42 permits the consolidation of claims and issues which share common aspects of law or fact. Fed. R. Civ. P. 42(a). Consolidation is inappropriate "if it leads to inefficiency, inconvenience, or unfair prejudice to a party." *E.E.O.C. v. HBE Corp*., 135 F.3d 543, 550-551 (8th Cir. 1998). The Court finds that consolidation of the Washburn and Jordan trials is not appropriate. Each concerns incidents that are factually unrelated, and consolidation would, therefore, not result in efficiencies for the Court or the parties. There would be, however, a significant risk of prejudice to Defendant Fagan, since both incidents involve the use of force by Defendant Fagan on different occasions. Accordingly, the Court **DENIES** Plaintiffs' request to consolidate the claims and cases of Plaintiffs Washburn and Jordan.[11]

**V. Plaintiffs' Rule 56(f) Request**

Under Rule 56(f), a district court may refuse to grant a party's motion for summary judgment on the ground that the opposing party requires time to conduct further discovery. Rule 56(f)

---

[8]Plaintiffs contend that the City may be directly liable for failure to discharge a mandatory duty under California Government Code § 815.6. Plaintiffs assert that they will present evidence that a San Francisco Department General Order prevents the assignment of two probationary officers from working patrol together, and that Fagan and Officer Kristal, both probationary officers, were assigned to patrol together in this case. Plaintiffs' argument is without merit. Police departmental or municipal policy directive do not create a mandatory duty to individual citizens. *Lehto v. City of Oxford*, 171 Cal. App. 3d 285, 292-95 (1985).

[9]Plaintiff Washburn voluntarily withdrew his intentional infliction of emotional distress claim. (Doc. No. 91).

[10]Plaintiff Washburn's Renewed Motion for Full Consolidation of Claims. (Doc. No. 244).

[11] Plaintiff Washburn also has renewed his request to avoid bifurcating Plaintiff's *Monell* claims from his individual liability claims. In light of this order dismissing Plaintiff's *Monell* claims, the Court **DENIES** Plaintiff's request as moot. The Court also **DENIES** Plaintiffs' request to reconsider the Court's previous grant of summary judgment as to Plaintiffs' false arrest claims. Plaintiffs have not demonstrated new law or facts to justify such reconsideration.

requires the party seeking further discovery to demonstrate diligence in prior discovery attempts, and make a showing that the evidence it sought would require denial of the motion for summary judgment. *Qualls v. Blue Cross of Cal., Inc.*, 22 F.3d 839, 844 (9th Cir. 1994). The moving party must "specifically identif[y]" the relevant information, show "some basis for believing that the information actually exists", and that this information would "prevent summary judgment." *VISA Intern. Service Ass'n v. Bankcard Holders of America*, 784 F.2d 1472, 1475 (9th Cir. 1986)

At oral argument, Plaintiffs stated that they seek to obtain the following discovery: 1) Fagan's use of force logs; 2) depositions of Dr. Lenhart and Sergeant Stansberry; and 3) depositions of the City's police commission, or others high ranking officials. The Court finds that Plaintiffs have not fulfilled the requirements of Rule 56(f). As an initial matter, the Court notes that Magistrate Judge Laporte ordered eight "use of force" logs produced, and it appears that Defendants have produced these documents. Moreover, at oral argument, Plaintiffs conceded that neither Dr. Lenhart nor Sergeant Stansberry would likely offer any testimony that would raise an issue of fact concerning the current motion. Finally, the Court notes that it allowed Plaintiffs to take six depositions in the current case. Plaintiffs' decision not to use those six depositions on members of the police commission, or other high ranking officials to establish the identify of the final policy maker on behalf of the City of San Francisco Police Department was a strategic decision that the Court will not second guess.

Plaintiffs also seek leave to conduct further discovery based upon a series of articles which appeared in the San Francisco Chronicle newspaper in February 2006. These articles detail the use of force by San Francisco police officers from the period of 1996 to 2004. In support of their 56(f) motion, Plaintiffs have offered the articles themselves and a declaration from the series author. Rule 56(f) requires the moving party to make a showing that additional evidence exists which, if submitted, would be sufficient to avert an unfavorable summary judgment ruling. *Id.* The Court does not find, based upon the offered articles and the declaration, that Plaintiffs have met their burden.

First, the record reflects that Plaintiffs have not demonstrated diligence as to their Rule 56(f) request. The Court notes that Plaintiffs were allowed more than adequate time to complete

discovery in this case. On July 6, 2004, the Court extended that time allowed for both parties to complete fact discovery. On November 1, 2004, the Court once again extended the deadline for the parties to complete discovery. On December 13, 2004, the Court ordered the deadlines for all discovery stayed. The Court referred this matter to Magistrate Judge Laporte for discovery purposes, and the record reflects that the parties engaged in discovery conferences with Magistrate Judge Laporte throughout the spring of 2005. On June 9, 2005, Magistrate Judge Laporte granted in part Plaintiffs' motion to compel documents. In light of this procedural history, the Court finds that Plaintiffs have been given more than adequate opportunity to obtain full and complete discovery regarding their claims.

Additionally, Plaintiffs have not met their burden in demonstrating the existence of evidence which would avert summary judgment on the issues before the Court. First, the Chronicle articles and the declaration submitted address the use of force by the San Francisco Police Department, but do not address the pertinent issue here: the existence of a policy of *unlawful* use of force rising to the level of deliberate indifference to Plaintiffs' rights during the time of Plaintiffs' claims.[12] This is a critical distinction, as only the use of wrongful or excessive force is relevant to the instant case. Moreover, the nexus between a series of newspaper articles regarding the use of force by police officers and the existence of a policy reflecting a deliberate indifference to training or to failure to discipline is highly speculative on this record. This undermines Plaintiffs' assertion that the evidence supporting their motion actually exists. Finally, Plaintiffs have not produced evidence that increased training or discipline would have prevented the constitutional injury here, and nothing in the articles suggests the existence of additional evidence which would remedy this deficiency. Accordingly, Plaintiffs' showing falls well short of the requirement that Plaintiffs "specifically identif[y]" information that would avert summary judgment and that Plaintiffs demonstrate prior diligence in acquiring the sought after information. *Qualls*, 22 F.3d 844. Plaintiffs' motion for additional discovery under Rule 56(f) is therefore **DENIED**.

---

[12]Plaintiffs cite an article in which Defendant Fagan "reported using force 14 times in his first 13 months." The article does not distinguish between legitimate force and wrongful/excessive force. (Plaintiff's Motion for Leave to Supplement Pursuant to Rule 56(f), Doc. No. 237, 3).

United States District Court
For the Northern District of California

/ / /

**CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Defendants' motion for summary judgment as to Plaintiffs' *Monell* claims and **DENIES** Plaintiffs' motion for additional discovery under Rule 56(f).

**IT IS SO ORDERED.**

Dated: April 21, 2006

MARTIN J. JENKINS
UNITED STATES DISTRICT JUDGE